# 21-3029

*To be Argued by:* CARINA H. SCHOENBERGER

# United States Court of Appeals

## FOR THE SECOND CIRCUIT
### Docket No. 21-3029

UNITED STATES OF AMERICA,

*Appellee,*

v.

LAWRENCE C. BERRY,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## BRIEF FOR APPELLEE UNITED STATES OF AMERICA

CARLA B. FREEDMAN
*United States Attorney*
*Northern District of New York*
100 South Clinton Street
Syracuse, NY 13261-7198
Tele: 315-448-0672
Email: Carina.Schoenberger@usdoj.gov

MICHAEL D. GADARIAN
CARINA H. SCHOENBERGER
*Assistant United States Attorneys*
*of Counsel*

# TABLE OF CONTENTS

PAGE

STATEMENT OF THE ISSUES
    PRESENTED ................................................... 1

STATEMENT OF THE CASE ............................ 2

    A.  Introduction ............................................. 2

    B.  Procedural History .................................. 2

STATEMENT OF FACTS ..................................... 3

    A.  Offense Conduct ..................................... 3

    B.  Plea Proceedings .................................... 5

    C.  Berry's *Pro Se* Submissions ................. 10

    D.  Sentencing ............................................. 12

SUMMARY OF ARGUMENT ............................ 15

ARGUMENT ....................................................... 17

POINT I:
    Berry Establishes No Plain Error in the
    District Court's Acceptance of His
    Guilty Plea as Knowing, Voluntary, and
    Intelligent. ................................................... 17

    A.  Governing Law ...................................... 17

    B.  Standard of Review ............................... 18

    C.  Discussion .............................................. 19

ii

POINT II:

    Berry Establishes No Plain Error in the District Court's Reference to His *Pro Se* Submissions at Sentencing. ........................ 22

    A.  Governing Law ...................................... 22

    B.  Standard of Review ............................... 23

    C.  Discussion ............................................. 23

POINT III:

    Berry Establishes No Plain Error in the District Court's Explanation for His Sentence. .................................................. 26

    A.  Governing Law ...................................... 26

    B.  Standard of Review ............................... 27

    C.  Discussion ............................................. 27

CONCLUSION ..................................................... 29

iii

# TABLE OF AUTHORITIES

**Cases:**

*Bradshaw v. Stumpf,*
    545 U.S. 175 (2005) ......................................... 17

*Brady v. United States,*
    397 U.S. 742 (1970) ......................................... 17

*Gall v. United States,*
    552 U.S. 38 (2007) ........................................... 26

*McCarthy v. United States,*
    394 U.S. 459 (1969) ......................................... 17

*Rita v. United States,*
    551 U.S. 338 (2007) .................................... 26, 28

*United States v. Adams,*
    955 F.3d 238 (2d Cir. 2020) ................ 18, 19, 21

*United States v. Cassesse,*
    685 F.3d 186 (2d Cir. 2012) ............................ 26

*United States v. Dantzler,*
    771 F.3d 137 (2d Cir. 2014) ............................ 23

*United States v. Fernandez,*
    443 F.3d 19 (2d Cir. 2006) ........................ 26, 27

*United States v. Frady,*
    456 U.S. 152 (1982) ......................................... 19

*United States v. Rivernider,*
    828 F.3d 91 (2d Cir. 2016) ........................ 24, 25

iv

*United States v. Stewart*,
686 F.3d 156 (2d Cir. 2012) ............................ 25

*United States v. Verkhoglyad*,
516 F.3d 122 (2d Cir. 2008) ............................ 27

*United States v. Villafuerte*,
502 F.3d 204 (2d Cir. 2007) ...................... 19, 27

*United States v. Youngs*,
687 F.3d 56 (2d Cir. 2012) ............ 17, 18, 19, 27

**Federal Statutes, Rules and Other Authorities:**

18 U.S.C. § 2251(a) ........................................... 2, 3

18 U.S.C. § 2251(e) ....................................... 2, 3, 5

18 U.S.C. § 3161(B) ............................................ 10

18 U.S.C. § 3553(a) ....................................passim

18 U.S.C. § 3553(c) ............................................ 26

18 U.S.C. § 3661 ................................................. 23

U.S.S.G. § 5G1.2(b) ............................................ 7

Fed. R. Crim. P. 11 ................................. 17, 18, 19

Fed. R. Crim. P. 11(b)(1)(H) ......................... 18, 20

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
## FOR THE SECOND CIRCUIT
### Docket No. 21-3029

---

UNITED STATES OF AMERICA,
*Appellee,*

v.

LAWRENCE C. BERRY,
*Defendant-Appellant.*

---

## BRIEF FOR THE
## UNITED STATES OF AMERICA

---

## STATEMENT OF THE ISSUES PRESENTED

1.  Whether the defendant has established plain error in the district court's acceptance of his guilty plea as knowing, voluntary, and intelligent where defendant was advised that he faced a maximum term of imprisonment of thirty years per count of conviction without an additional statement that the terms could run consecutively.

2.  Whether the defendant has established plain error in the district court's reference to the defendant's *pro se* statements as one reason it found that the defendant failed to appreciate the seriousness of his crime.

2

3.  Whether the defendant has established plain error in the district court's explanation for why it imposed a below-guidelines, thirty-year term of imprisonment for crimes involving sexually exploiting a child.

## STATEMENT OF THE CASE

### A. Introduction

Defendant-Appellant Lawrence C. Berry appeals from the judgment entered by the United States District Court for the Northern District of New York (Hurd, J.) following his plea of guilty to sexually exploiting a child and conspiring to sexually exploit a child. Berry argues that he did not knowingly and intelligently plead guilty, that the district court improperly relied on his *pro se* submissions at sentencing, and that the district court failed to adequately explain the basis for his sentence. Brief for Defendant-Appellant ("Br.") 17. Berry did not raise any of these claims in the district court.

### B. Procedural History

On February 5, 2020, a federal grand jury returned an indictment charging Berry with one count of conspiracy to sexually exploit a child, in violation of 18 U.S.C. § 2251(a) and (e); and five counts of sexual exploitation of a child, in violation

3

of 18 U.S.C. § 2251(a) and (e). A:21-23.[1] The district court scheduled Berry's jury trial to begin on August 3, 2021. Dkt. text order dated July 6, 2021. On July 28, 2021, Berry pled guilty to all six counts in the indictment without a plea agreement. Dkt. text minute entry dated July 28, 2021; A:96. On August 30, 2021, Berry moved *pro se* to dismiss the indictment, and the government opposed. Dkt. 76, 80. On November 23, 2021, the district court denied Berry's motion and imposed a sentence consisting principally of concurrent 360-month terms of imprisonment and a 25-year term of supervised release. Dkt. text minute entry dated Nov. 23, 2021, 87; A:96-98.

The district court entered judgment on December 12, 2021, and Berry filed a timely notice of appeal the next day. Dkt. 88, 90; A:96-110.

## STATEMENT OF FACTS

### A. Offense Conduct

In 2018, Berry conspired with his wife to sexually abuse a three-year-old boy and take photographs and video of the abuse. GA:5 (government's offer of proof); A:38 (Berry

---

[1] "A" refers to the appendix filed by Berry. "GA" refers to the government's proposed appendix. "Dkt." refers to entries in the docket report for Case No. 20-cr-47 (N.D.N.Y.), which appears at A:1-12.

4

admitting facts in government's offer of proof).
Berry and his wife agreed that she would use the
child in sexually explicit acts, as directed by Berry.
GA:5. In accordance with their plan, Berry's wife
photographed, video recorded, and/or live
streamed the child's abuse, and sent the
photographs and video recordings to Berry or let
him watch the abuse on the internet over
live-streamed video. GA:5. Berry directed his wife
to subject the child to oral sex, touch the child's
penis and testicles, and have the child touch
Berry's wife's vaginal area and breasts, all of which
Berry's wife did. GA:5-15. Berry viewed depictions
of the abuse or watched them live over the internet
while he was traveling for work with a carnival.
GA:6-14; PSR ¶¶10, 25.[2] Among other things,
Berry told his wife to "get [the child's] dick hard"
and "[h]elp him get his dick in [her vagina]." GA:6.
When his wife protested, Berry told her, "Just do it
no one will know." GA:6. Another time, Berry
wrote to his wife, "Tell him if he love u he won't say
anything or put a wash cloth in his mouth and hold
his hand so he can't take it out and suck his dick."
GA:12. Berry stated during his guilty plea
colloquy, "I requested that she would send me
these depictions of [the victim], who was three and
a half and—or I would leave her." A:35.

---

[2] "PSR" refers to the presentence investigation
report, Dkt. 84, which Berry has provided to this
Court. Berry made no objection to the facts in the
PSR, which the district court adopted. A:85.

5

## B. Plea Proceedings

Berry pled guilty to the charges in the indictment less than a week before the scheduled trial date. Before the change of plea hearing, the government filed its written offer of proof with a provision stating:

> **<u>Potential Maximum Penalties:</u>** The Court can impose the following maximum penalties for the offenses to which the defendant is pleading guilty and may be required to impose mandatory minimum terms of imprisonment, all as set out below:
>
> a) **Maximum term of imprisonment:** 30 years per count, pursuant to 18 U.S.C. § 2251(e).
>
> b) **Mandatory minimum term of imprisonment:** 15 years per count, pursuant to 18 U.S.C. § 2251(e).

GA:1. The offer of proof also listed the elements of the charged offenses and the factual basis for the guilty plea. GA:4-15.

At the change of plea hearing, defense counsel acknowledged receiving the government's offer of proof and told the district court, "I was able to review that in its entirety with Mr. Berry in the Marshal's office. I was able to read that aloud to him between the screen. He indicated to me that

6

he understood everything contained in the offer of proof." A:33. Later in the hearing, defense counsel said, "We were in the Marshal's office and reviewed the offer of proof filed this morning as Docket 74 in its entirety. . . ." A:38.

At the district court's request, the government said in court, "the maximum term of imprisonment is 30 years per count. The mandatory minimum term of imprisonment is 15 years per count." A:38-39.

The district court then had the following exchange with Berry:

THE COURT: Mr. Berry, do you realize the penalties you are facing as a result of your plea of guilty today?

THE DEFENDANT: Yes, sir.

THE COURT: [Government], repeat again if there is a mandatory minimum.

[GOVERNMENT]: Yes, your Honor. There is a 15-year mandatory minimum for each of the counts that the defendant would be pleading guilty to.

THE COURT: Mr. Berry, do you understand that unless circumstances should change between now and sentencing, I would have no choice but to sentence you to at least 15

7

years in prison at that time. Do you understand that clearly?

THE DEFENDANT: Yes, sir.

THE COURT: Other than the mandatory minimum, [Government], is there any guideline—advisory guideline sentence at this time?

[GOVERNMENT]: Your Honor, the government expects that the guidelines, a total offense level will end up being in excess of 43, but treated as a 43 because the guidelines do not go over 43. If that were to be the case, the defendant's guidelines imprisonment range would be life.[3] If I am incorrect about my estimation, that would not be a basis for the defendant to withdraw his plea of guilty.

---

[3] The government's statement that Berry could face a guidelines term of imprisonment of life failed to account for the impact of U.S.S.G. § 5G1.2, which, in the circumstances presented here, provides for potential "total punishment" up to the combined statutory maximum terms of imprisonment, or 2,160 months (180 years). PSR ¶¶129, 131. The stated range and the final calculated range both described a potential term of imprisonment that effectively would constitute a life sentence.

8

THE COURT: Mr. Berry, have you talked with [defense counsel] about what the advisory guidelines might be in this case?

THE DEFENDANT: Yes, I have.

THE COURT: If the guidelines are less than 15 years, 15 years would be the guidelines. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: The next step will be a presentence report. Probation will be directed to prepare such a report for my consideration and you must cooperate with the probation officer in preparing your report. Once it's been completed, you, [defense counsel] and the government will have a number of opportunities to object to any of the facts that may be reported by the probation officer and/or to challenge the advisory guideline recommendation of the probation officer. I, again, remind you that at the moment you are facing a mandatory minimum of 15 years. I could sentence you to more, but I cannot sentence you to less. Understand?

THE DEFENDANT: Yes, sir.

THE COURT: I also advise you that when you are sentenced to prison, that under the

9

federal system, parole has been abolished and you will not be released on parole. However, you may secure good behavior credits, a maximum of 52 days per year. Now that you have been informed about the maximum penalties you are facing, the mandatory minimum penalties you are facing and how the advisory guidelines might affect you, do you still want to enter a plea of guilty to the six-count indictment against you?

THE DEFENDANT: Yes, sir.

A:39-41.

Defense counsel advised the district court that he had reviewed the guidelines with Berry, including the "number of characteristics described that might apply . . . that would result in enhancements" and "Section 4B1.5 involving repeat and dangerous sex offenses against minors . . . and explained to him how that might apply." A:42. Defense counsel confirmed his belief that Berry "understands the consequences of pleading guilty to the six charges." A:44.

The district court accepted Berry's guilty plea, finding that Berry's plea was voluntary, that "Berry is fully competent and capable to enter a plea of guilty to the six charges," and "defendant understands each charge against him and the consequences of pleading guilty." A:44.

10

Neither party raised objections regarding the plea proceedings. A:45.

## C. Berry's *Pro Se* Submissions

Nearly two months after his guilty plea, Berry filed a *pro se* motion with the district court asking for the indictment to be dismissed "on the ground that dismissal is required in the interest of justice." A:48-49.[4] Approximately two weeks after that, on September 13, 2021, Berry submitted a *pro se* letter to the district court inquiring about his earlier motion "about dismissing my indictment on the grounds of speedy trial under 18 U.S.C. § 3161(B)." A:53. Berry explained "I feel that my speedy trial was denied. I know that I already plead guilty, but I hope that we can change it. In the day I plead guilty I was recovering from being knock out for the charges and I could only hear out of one ear. Please have mercy and allow me to take back the guilty plea and to grant this motion." A:53.

The government opposed the motion, arguing that Berry had no right to file *pro se* papers because he was represented by counsel, that his speedy trial claims were barred, and that his arguments lacked merit in any event. A:58-66. The

---

[4] Quotations from Berry's *pro se* filings retain their original grammar, spellings, and punctuation.

11

government argued that Berry was not entitled to withdraw his plea and did "not assert that he could not understand the proceedings, that his plea was not knowing and voluntary, that he is factually innocent, or that he now wants a trial." A:67.

On September 27, 2021, Berry submitted another *pro se* letter to the district court inquiring about his motion. A:69. He said that his speedy trial rights were violated, and "I would have done this sooner, but I just learned about it. So I started to study it more and founded it was denied to me." A:69-70. Berry wrote, "I know the severate of the crime, and I know that it is wrong to do sexual thing to a child. What I did not know was I could get in truble for talking about it. Which is a violation of my first amendment right of freedom of speech. So on all of this thing I feel like the indictment should be dismiss. I know that if it don't get dismiss I am look at 30+ years for just talking about it. When a preson who actual did something get less then that." A:70.

Before proceeding to sentencing at the hearing held on November 23, 2021, the district court orally denied Berry's *pro se* motion "for all the reasons set forth in the government's opposing affidavit." A:84.

12

**D. Sentencing**

The PSR prepared by the probation office before sentencing described the statement Berry gave regarding his acceptance of responsibility:

> The defendant was interviewed by the probation officer and provided a statement wherein he admitted involvement in the offense, as follows: He wrote messages to [his wife] to do sexual stuff to [the victim], who was three years old at the time. [She] sexually abused him, recorded the abuse, and sent the images and videos to him, as he requested. He was usually the one in control of their relationship and he would threaten to leave her if she did not do what he was asking of her. He does not know why he did it and is not sure where the idea to abuse [the victim] came from. He feels bad about it and is mad at himself. He is not sure how the images made him feel but admits he became somewhat sexually aroused by them. He was lonely and isolated when he was traveling with the carnival, and was watching a lot of pornography at that time, including of gay, incest and bestiality. . . .

PSR ¶25.

Before imposing sentence, the district court stated that it reviewed the PSR, the indictment, the offer of proof, memoranda submitted by the

13

parties, "a couple of letters from the defendant," and "the applicable sentencing guidelines as well as the other factors listed in 18 United States Code Section 3553(a)." A:85, 91. Neither Berry nor his attorney objected to the district court's apparent reference to Berry's *pro se* submissions. A:85-86, 94.

The district court explained that Berry had a total offense level of 43, and a category I criminal history. A:86; PSR ¶129. The court noted that these determinations would ordinarily result in an advisory guidelines prison term of life, but because a life term exceeded the combined statutory maximum prison terms for all of Berry's counts of conviction, the guidelines range instead would be the combined statutory maximum of 2,160 months, or 180 years. A:86; PSR ¶129. Neither party objected to the district court's guidelines calculation. A:86.

Defense counsel argued for the fifteen-year mandatory minimum prison term based on Berry's upbringing and lack of familial support. A:82, 87-89. The government advocated for "the guideline sentence or a significant term of imprisonment" based on the seriousness of Berry's offense and danger to the community "as he appears to lack meaningful insight into his offense and the significance of what it is that he did." A:89-91.

14

Berry spoke at the hearing saying, in total, "I want to say I am sorry for what I have done and for all the hardship that I have put on the courts and with [the victim's grandparents] and all that. And I don't know why I did it, but it happened." A:88.

The district court selected a below-guidelines, 30-year sentence explaining:

After careful consideration of the record and the arguments presented by both sides, I find that the guideline range of 180 years, which is essentially, of course, a life sentence, is greater than necessary to meet the goals of sentencing outlined in 3553(a). However, a lengthy sentence is nevertheless warranted to reflect the serious nature of your offenses. Your repeated requests to your wife for her to sexually abuse [the victim], along with the emotional manipulation of your wife, including threats to leave her if she did not comply with your requests, it is doubtful the abuse would have occurred. It was at your request and direction that your wife agreed, although somewhat reluctantly to participate in the abuse and presumably only to appease you.

While you now admit your involvement in the offense, you continue to distance yourself from the abuse because you did not actually commit the hands-on abuse. It is, however, clear, based upon your statements to

15

probation and the letters you wrote and the
transcripts that were on the record and to
your wife that you clearly do not appreciate
the seriousness of your conduct and the
irreparable harm you caused to your wife
and, especially, to [the victim]. . . .

However, as I noted earlier, the guideline
range is 180 years, and I don't think you are
going to live that long. So a non-guideline
sentence would be appropriate under the
circumstances, but the sentence will be
significant.

A:91-92. Neither party objected to the district
court's statement or requested further
explanation. A:94. The district court issued a
written statement of reasons outlining
substantially the same factors in support of the
chosen sentence. Dkt. 89.[5]

## SUMMARY OF ARGUMENT

Berry has not demonstrated any error, much
less plain error, with respect to any of his claims
on appeal.

The district court did not err in finding that
Berry pled guilty knowingly, voluntarily, and

---

[5] The government has provided this Court with
a copy of the district court's written statement of
reasons.

16

intelligently. This Court already has explained that district courts are not required to explicitly inform defendants that their sentences may run consecutively, and Berry was advised that he faced a 30-year maximum prison term on each of his six counts of conviction. Indeed, before sentencing he acknowledged that he faced "30+ years" for his crimes. A:70. Nothing in the proceedings below suggests that Berry did not understand the potential magnitude of the sentence he faced or that the district court erred, let alone plainly so, in accepting Berry's guilty plea.

Berry does not, and cannot, show error in the district court's reference at sentencing to the statements he made in *pro se* submissions as being among those that reflected Berry's lack of appreciation for the seriousness of his crime. District courts are entitled to consider all information concerning a person's background, character, and conduct when making a sentencing determination, and Berry's *pro se* statements deflecting responsibility were consistent with other statements he made about his crimes and relevant to the sentencing factors the district court had to consider.

Finally, Berry fails to sustain his burden of demonstrating plain error in the district court's explanation for Berry's below-guidelines sentence. The district court, both orally and in its written statement of reasons, described the specific facts that led it to choose a significant prison term that

17

nevertheless fell below the 180-year advisory sentence.

The judgment of conviction should be affirmed.

## ARGUMENT

**POINT I:   Berry Establishes No Plain Error in the District Court's Acceptance of His Guilty Plea as Knowing, Voluntary, and Intelligent.**

### A. Governing Law

"A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).

Federal Rule of Criminal Procedure 11 "sets forth certain requirements of the district court's plea allocution to assist the court with 'making the constitutionally required determination that a defendant's guilty plea is truly voluntary.'" *United States v. Youngs*, 687 F.3d 56, 59 (2d Cir. 2012) (quoting *McCarthy v. United States*, 394 U.S. 459, 465 (1969)). Before accepting a guilty plea, the district court must, pursuant to Rule 11, "address the defendant personally in open court" and "inform the defendant of, and determine that the

18

defendant understands," among other things, "any maximum possible penalty, including imprisonment, fine, and term of supervised release." Fed. R. Crim. P. 11(b)(1)(H).

Rule 11 does "not require the district court to explicitly inform [the defendant] that his sentences could run consecutively." *United States v. Adams*, 955 F.3d 238, 246 (2d Cir. 2020). "Although a district court must inform the defendant of the maximum possible sentence he faces on each count, . . . Rule 11 does not require a district court to 'do the math' for a defendant." *Id.* at 246. "[T]he logical inference from a listing of the maximum terms of imprisonment for the individual counts is that the terms of imprisonment for each could run consecutively." *Id.* Accordingly, "a district court's failure to advise a defendant that sentences could run consecutively does not render a guilty plea invalid." *Id.* at 245.

## B. Standard of Review

This Court reviews unpreserved challenges to purported Rule 11 violations for plain error. *Adams*, 955 F.3d at 245. "Plain error review requires a defendant to demonstrate that (1) there was error, (2) the error was plain, (3) the error prejudicially affected his substantial rights, and (4) the error seriously affected the fairness, integrity or public reputation of judicial proceedings." *Youngs*, 687 F.3d at 59 (quotation marks omitted). "In the context of a Rule 11

19

violation, to show plain error, a defendant must establish that the violation affected substantial rights and that there is a reasonable probability that, but for the error, he would not have entered the plea." *Adams*, 955 F.3d at 245 (quotation marks omitted).

"[R]eversal for plain error should 'be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Villafuerte*, 502 F.3d 204, 209 (2d Cir. 2007) (quoting *United States v. Frady*, 456 U.S. 152, 163 n.14 (1982)).

## C. Discussion

Berry identifies no error, and certainly not any obvious error, in the district court's acceptance of his guilty plea as knowing, voluntary, and intelligent.

Berry's primary argument for why the district court should not have accepted his plea—that he was not informed of the penalties he was facing, Br. 21—contradicts the record. Before Berry pled guilty, the government filed a written offer of proof identifying the maximum term of imprisonment for the charges in the indictment as "30 years per count," and Berry's attorney twice advised the district court that he reviewed the offer of proof with Berry "in its entirety." GA:1; A:33, 38. Defense counsel told the district court that Berry "indicated to me that he understood everything

20

contained in the offer of proof." A:33. In open court, the government stated that "the maximum term of imprisonment is 30 years per count" and that the advisory guidelines range could be "life."[6] A:38, 40. Defense counsel did not object to the government's statements—which suggests that they comported with defense counsel's understanding—and represented that he reviewed the guidelines with Berry. A:40, 42. Defense counsel confirmed that Berry "understands the consequences of pleading guilty to the six charges." A:44. Berry affirmed directly to the district court that he "realize[d] the penalties [he was] facing as a result of [his] plea of guilty." A:39.

The record before the district court supported its conclusion that Berry "understands . . . the consequences of pleading guilty," A:44, and demonstrates that the district court satisfied its obligation to "determine that the defendant understands . . . any maximum possible penalty, including imprisonment," Fed. R. Crim. P. 11(b)(1)(H). Berry was advised multiple times that he faced 30 years' imprisonment per count of conviction, and the district court was not required

---

[6] As previously noted, the characterization of Berry's potential sentence as "life" technically was incorrect, because it did not account for the limit of the 180-year combined statutory maximum. Nevertheless, as a practical matter, Berry was correctly informed that he faced the prospect of spending the rest of his life in prison.

21

to "do the math" and "explicitly inform [the defendant] that his sentences could run consecutively." *Adams*, 955 F.3d at 245-46. The "logical inference," *id.* at 246, is that the total possible prison term Berry faced was six times 30, or 180 years. Because Berry "was informed of the maximum term of imprisonment . . . for each count," "the record amply demonstrates that the district court fulfilled its obligations under Rule 11." *Id.*

In addition to failing to demonstrate any error made by the district court in accepting Berry's plea, Berry does not show any effect on his substantial rights based on the identification of the maximum prison term per count, rather than added up consecutively. Berry's understanding that he could potentially be imprisoned for more than 30 years is evident in his pre-sentencing, *pro se* letter to the district court saying, "I am look at 30+ years." A:70. Contrary to his argument on appeal, Br. 23-24, Berry cannot establish a reasonable probability that he would not have pled guilty if the district court tallied the total terms of imprisonment he faced on each count. Berry's uncounseled attempt to withdraw his plea was not based on realizing that he was looking at "30+ years," but rather on an unfounded belief that his speedy trial rights were violated. A:53, 69-70. Moreover, Berry chose to plead guilty even after the government said his guidelines imprisonment range could be life. And even if this Court credits Berry's *post hoc* claims that he "was recovering

22

from being knock out" and "could only hear out of
one ear" at the change of plea hearing, A:53, Berry
never contends that he could not understand the
proceeding or make a choice to plead guilty. The
hearing transcript, including Berry's dialogue with
the district court and his attorney's descriptions of
their interactions that day, supports the district
court's conclusion that he could.

Berry has not established plain error in the
district court's acceptance of his plea, and his
conviction should be affirmed.

**POINT II:  Berry Establishes No Plain Error
in the District Court's Reference
to His *Pro Se* Submissions at
Sentencing.**

### A. Governing Law

To determine "the particular sentence to be
imposed," a district court must consider certain
factors, including "the nature and circumstances of
the offense and the history and characteristics of
the defendant" and "the need for the sentence
imposed . . . to reflect the seriousness of the
offense, to promote respect for the law, and to
provide just punishment for the offense." 18 U.S.C.
§ 3553(a). "No limitation shall be placed on the
information concerning the background, character,
and conduct of a person convicted of an offense
which a court of the United States may receive and

23

consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

## B. Standard of Review

This Court reviews for plain error unpreserved challenges to the materials a district court relies on at sentencing. *United States v. Dantzler*, 771 F.3d 137, 141 (2d Cir. 2014). To prevail, the defendant raising the challenge for the first time on appeal must demonstrate that the district court made an obvious error that affected his substantial rights and seriously affects the fairness, integrity or public reputation of judicial proceedings. *Id.*

## C. Discussion

The district court made no error in considering, among other things, Berry's *pro se* statements to the court in concluding that Berry failed to appreciate the seriousness of his crime.

The district court explained that Berry deserved a significant sentence, in part, because he "continue[d] to distance [him]self from the abuse" and "clearly d[id] not appreciate the seriousness of [his] conduct and the irreparable harm [he] caused to [his] wife and, especially, to [the victim]." A:92. The district court identified multiple statements by Berry that made this "clear," including his "statements to probation and the letters [he] wrote and the transcripts that were on the record." A:92. Berry's statement to the probation office did not

24

include any acknowledgment of the harm done to the child victim, and his post-plea, *pro se* submissions to the court characterized his crime as "talking about" sexually abusing a child, rather than causing a child to be abused. PSR ¶25; A:70. Berry complained about facing an extended prison sentence "for just talking about it," when he was not someone who "actual did something." A:70. The government's offer of proof and the PSR included lengthy transcripts of the disturbing chats between Berry and his wife that showed him disregarding the welfare of the child and minimizing the harm done to him. GA:1-14; PSR ¶¶13-22. *See, e.g.*, PSR ¶13 (Berry writing "He will be fine" in response to his wife's message saying "I just don't feel right doing that to him"). The district court also observed Berry's in-court statement at sentencing, during which Berry mentioned the hardship he caused the courts and the victim's grandparents, but nothing about his wife or the three-year-old victim of his crimes. A:88.

That Berry submitted statements to the district court *pro se* did not preclude the district court from including them among the several statements it considered at sentencing. While a defendant "has no right to 'hybrid' representation, in which he is represented by counsel from time to time, but may slip into *pro se* mode for selected presentations," a district court still has the discretion "to hear from a represented defendant personally" or allow a defendant to make a *pro se* submission. *United States v. Rivernider*, 828 F.3d 91, 108 & n.5 (2d Cir.

25

2016). Neither Berry nor his attorney objected to the district court's reference to Berry's *pro se* submissions, and the district court did not err in doing so. The court had to consider Berry's offense and character pursuant to 18 U.S.C. § 3553(a), and "a person's history and personal characteristics can often be assessed by a sentencing court only or principally through analysis of what that person has said—in public, in private, or before the court." *United States v. Stewart*, 686 F.3d 156, 166 (2d Cir. 2012). Preventing the court from acknowledging statements evidencing Berry's belief that his role in a conspiracy that resulted in a young child being sexually assaulted amounted only to "talking about it," A:70, "would take away from the district court the ability fully to assess facts bearing on the defendant's state of mind in accordance with the requirements of section 3553, which enables the court to impose a sentence fair to both the defendant and society," *Stewart*, 686 F.3d at 174.

Even if Berry could show error in the district court's reference to his *pro se* statements—which he cannot—he fails to demonstrate prejudice on plain error review because, as described above, the district court relied on multiple facts and statements to conclude that Berry insufficiently appreciated the seriousness of his crimes. Berry does not satisfy his burden of showing plain error, and his challenge to his sentence should be rejected.

26

**POINT III:** **Berry Establishes No Plain Error in the District Court's Explanation for His Sentence.**

## A. Governing Law

Under 18 U.S.C. § 3553(c), a district court is required at the time of sentencing to "state in open court the reasons for its imposition of the particular sentence." The statute "requires no specific formulas or incantations; rather, the length and detail required of a district court's explanation varies according to the circumstances." *United States v. Cassesse*, 685 F.3d 186, 192 (2d Cir. 2012). An adequate sentencing explanation will "allow for meaningful appellate review and . . . promote the perception of fair sentencing." *Gall v. United States*, 552 U.S. 38, 50 (2007); *see also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority").

This Court "entertain[s] a strong presumption that the sentencing judge has considered all arguments properly presented to her, unless the record clearly suggests otherwise." *United States v. Fernandez*, 443 F.3d 19, 29 (2d Cir. 2006), *abrogated on other grounds* by *Rita*, 551 U.S. 338. "This presumption is especially forceful when, as was the case here, the sentencing judge makes

27

abundantly clear that she has read the relevant submissions and that she has considered the § 3553(a) factors." *Fernandez*, 443 F.3d at 29.

## B. Standard of Review

Where a defendant challenges on appeal the explanation given for his sentence, but did not object below, this Court applies the plain error standard of review with "full rigor." *Villafuerte*, 502 F.3d at 211 (reviewing for plain error claim that district court failed to provide an adequate explanation for sentence imposed); *see also United States v. Verkhoglyad*, 516 F.3d 122, 128 (2d Cir. 2008) (same). Accordingly, as with his other claims on appeal, Berry has the burden of demonstrating a clear or obvious error that affected his substantial rights and seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Youngs*, 687 F.3d at 59.

## C. Discussion

The district court provided a sufficient explanation for Berry's 30-year sentence. Berry did not object below, nor did he have any principled basis to do so.

The district court explained, both orally and in writing, its reasons for concluding that a guideline prison term of 180 years would be "greater than necessary," but that "a lengthy sentence is nevertheless warranted." A:91-92; Dkt. 89. The

28

court identified "the serious nature of [Berry's] offenses" as a factor supporting the sentence, describing Berry's "repeated requests" for his wife to sexually abuse a three-year-old and the "emotional manipulation" and threats he used, without which "it is doubtful the abuse would have occurred." A:91. The court also explained that Berry continued to "distance" himself from the abuse, and the court told Berry "you clearly do not appreciate the seriousness of your conduct and the irreparable harm you caused to your wife and, especially, to [the victim]." A:92. The length and detail of this explanation was appropriate under the circumstances, where Berry facilitated the heinous abuse of a young child and received a prison term well below the range recommended by the guidelines. Indeed, where a district court selects a sentence within a guidelines range, "doing so will not necessarily require lengthy explanation." *Rita*, 551 U.S. at 356.

In addition to specifying facts that supported Berry's sentence, the district court stated on the record that it considered all the relevant sentencing factors and established that it reviewed the arguments in the parties' sentencing submissions. A:85, 91. Nothing in the record rebuts the presumption that the district court fulfilled its obligations under § 3553(a) or suggests that the district court considered any sentencing factor "to the exclusion of all other required factors," as Berry contends. Br. 31. The district court's stated basis for selecting Berry's term of imprisonment

29

allows for meaningful appellate review and demonstrates that Berry was subject to fair sentencing. Berry's attempt to show plain error in the district court's explanation fails, and his sentence should be affirmed.

## CONCLUSION

The judgment of conviction should be affirmed in all respects.

Dated: Syracuse, New York
September 13, 2022

Respectfully submitted,

CARLA B. FREEDMAN
*United States Attorney*
*Northern District of New York*
*Attorney for Appellee*

s/ *Carina H. Schoenberger*
By: CARINA H. SCHOENBERGER
*Assistant United States Attorney*

MICHAEL D. GADARIAN
*Assistant United States Attorney*
*of Counsel*

**CERTIFICATE OF SERVICE**
**BY NEXTGEN CM/ECF**

UNITED STATES OF AMERICA
v.
BERRY

Docket No. 21-3029

The undersigned hereby certifies that she is an employee of the Office of the United States Attorney for the Northern District of New York, and is a person of such age and discretion as to be competent to serve papers.

She further certifies that on September 13, 2022, she served a copy of the appellee's Brief and Government Appendix on the United States Court of Appeals for the Second Circuit and counsel for appellant, Sarah Kunstler, Esq., by uploading to the Second Circuit's ECF system a Portable Document Format (PDF) version of the Brief.

s/ *Deanna Lieberman*
Deanna Lieberman